## Swope *et al.* *versus* Ross *et al.*

*Bills of Exchange.—Rights of Drawee who discounts Bill before Maturity.*

1. The acceptor of a bill being the principal debtor, while the drawer and endorser are but sureties, *payment* by the former extinguishes the debt, leaving no right of action against the latter except when the acceptance was *supra protest.*

2. The acceptance of a bill is an engagement to pay it according to tenor and effect at maturity, and not before; and a bill is only "paid" when.it is done in due course and with an intention to discharge it.

3. The drawee of a bill may accept or pay it *supra protest* for the honour of the drawer or endorser, but if he discount it before maturity he stands in the position of an endorsee as against all prior parties.

4. The discounting of a bill by the drawee, who has not accepted it, is neither "payment" nor a promise to pay according to tenor and effect, but puts him in the position of an endorsee for value, with right of action against drawer and endorser.

ERROR to the Common Pleas of *Somerset county.*

This was an action of *assumpsit* in the Common Pleas, entered to February Term 1860, between George Ross & Co., plaintiffs, and Swope & Karns, in which the following case was stated for the opinion of the court in the nature of ·a special verdict.

Ross Forward gave to Swope & Karns the following instrument of writing :—

Somerset, Pa., August 18th 1859.

George Ross & Co., Bankers, pay to Swope & Karns, or order, ninety days from date, six hundred and sixteen dollars.

ROSS FORWARD.

On or about the 1st of September thereafter, Swope, one of the firm of Swope & Karns, delivered this paper · (endorsed Swope and Karns) to the plaintiffs' bank, had the same discounted, and received the money thereon less the discount, $16.40.

At the time this check was given, and when it was discounted at the bank, Ross Forward was one of the firm of George Ross & Co., but went out on the 19th of September 1859.

When the day of payment named in the check came round, Forward had no funds in the bank, and the paper was regularly protested for non-payment on the 19th of November 1859.

If the court be of the opinion that on the above state of facts, the plaintiffs are entitled to recover, the judgment to be entered in favour of plaintiffs for $616, with interest from November 19th 1859 ; otherwise judgment for defendant with costs. Notice of dishonour of the bill was admitted in the argument. ´ The court below entered judgment for plaintiffs for $616, with interest from November 19th 1859.

The defendants thereupon sued out this writ, and assigned the entry of judgment for plaintiffs for error.

[Swope *et al. v.* Ross *et al.*]

*Hugus* and *Kimmel,* for plaintiffs in error, argued that the drawee of a check, payable in future, who discounts it to the payee before it is payable, is not entitled to recover the money from the payee on account of the insolvency of the drawer. A check is, in form and effect, a bill of exchange. If George Ross & Co. had accepted this check, their liability to pay at maturity would not be questioned, whether the drawee had funds or not; the acceptor being the principal debtor : 3 Kent 85.

Payment before maturity is equally conclusive, and the bank can only resort to Forward for reimbursement.

As the check was to the *order* of Swope & Karns, their endorsement was necessary, of course, and would have been so if it were payable on demand.

If they had received the money on this, from any other party than the drawee, their endorsement would have made them liable on failure of payment by the drawee ; but here the drawee pays the money according to the request of the drawer, and receives from the holder $16.40 for present payment. Beside, the drawer was a member of the firm of George Ross & Co., the drawees, so that the doctrine of the court below is, that a man may draw a check on himself, payable in future, speculate on it before maturity, and, on his insolvency, compel the payee to refund the whole amount.

*Forward* and *Gaither,* for defendants in error.—The paper in controversy, not being due, was not presented for payment, nor did the plaintiffs agree to accept it to be paid when due, but they did agree to discount it on defendants' endorsement, as other undue paper is discounted. This endorsement without acceptance, waived the acceptance, and guarantied the other member of the firm of George Ross & Co. that Forward would pay it at maturity, which having failed to do, the endorsees become liable.

Although a check is in effect a bill of exchange, it is also true that bills payable to order are negotiable ; and a transfer by endorsement is similar to making a new bill, the endorser being a new drawer : 1 Wheaton's Selwyn 285. A blank endorsement is an equivocal fact, and it is in the power of the holder to use it as an acquittance to discharge the bill, or as an assignment to charge the endorser : Id. 287.

It was not a payment of their own paper. Forward, though a member of the firm of Ross & Co., was as much a stranger in this transaction as any other person.

The opinion of the court was delivered July 25th 1861, by

STRONG, J.—The question presented by the case stated is quite novel, and we have not been able to find that it has been

[Swope *et al. v.* Ross *et al.*]

adjudicated. Undoubtedly the acceptor of a bill of exchange is the principal debtor, and the drawer and endorsers are but sureties. Of course the acceptor, even after payment, cannot sue either the drawer or endorser of the bill unless his accept-ance was *supra protest.* His payment of the bill extinguishes it, but the case stated finds that the plaintiffs discounted the bill for the payees before it became payable, not that they accepted it or paid it. Discounting a bill, though it be done by the drawee, is neither acceptance nor payment. Acceptance is an engagement to pay the bill according to its tenor and effect when it becomes due, not before. A bill is paid only when there is an intention to discharge and satisfy it. In Burbidge *v.* Manners, 3 Camp. 194, Lord Ellenborough said "that even payment of a bill before it became due, does not extinguish it any more than if it were merely discounted," and added that "payment means payment in due course and not by anticipation." His lordship evidently thought that discounting a bill by a drawee is neither payment nor extinguishment. In Attenborough *v.* McKenzie, in the English Court of Exchequer, 36 Eng. Law and Eq. 562, it was held that if the acceptor of a bill discounts it, he may reissue it so as to charge the drawer; that nothing will discharge the drawer but payment, *i. e.* payment when due, or payment for the purpose of discharging and satisfying the bill. There-fore if the acceptor discounts the bill for the drawer and then endorses it away, the drawer will be liable upon it to the holder, and the transfer by the drawer to the acceptor will operate as an endorsement, although, at the time, the drawer does not intend to transfer by way of endorsement, being under the impression that the bill is discharged by coming into the hands of the acceptor. Nor will the payment of the amount less the discount, be deemed a payment of the bill by the acceptor. In that case the holder of the bill took it by endorsement after it was due, from the transferee of the acceptor. The ruling goes to the length that even the accepting drawee of a bill may take it as an endorsee, and as such may issue it. It also decides that he does take it as an endorsee when he discounts it. Can then the drawee of a bill, payable on time, who has discounted it, maintain an action on it against the drawer or endorser if it be protested for non-payment and notice be given? He is not a party to the bill until he has accepted it. Until then, he has not assumed the position of principal debtor, nor undertaken any obligation in regard to it. His discounting has neither paid nor extinguished it, and it is not a promise to pay according to its tenor and effect. Is he precluded from becoming an endorser by the fact that the bill was directed to him? It seems well settled that the drawee of a bill may accept or pay it, *supra*

[Swope *et al. v.* Ross *et al.*]

*protest*, for honour of the drawer or endorser, and if he takes it up he stands in the position of an endorsee paying full value for it, has the same remedies to which an endorsee would be entitled against all prior parties, and can of course sue the drawer or endorser: Chitty on Bills 375. In such cases the fact that the bill was drawn upon him does not incapacitate him from acquiring the rights of an endorsee. No reason is apparent for a different rule where the drawee becomes the holder by discounting the bill before its dishonour. Uncertain whether the drawer will put funds into his hands to meet the bill at maturity, he may well refuse to accept, and yet may discount it on the credit of both the drawer and endorser. If he does not accept he is as much a stranger to it as any other person discounting it for the drawer or endorser; is but purchasing the contract, and the contract thus purchased is that the drawee will pay the bill on presentment, when it shall fall due, or in case of his failing to do so, that the parties whose names are already upon it will pay, if due notice of its dishonour be given to them. The promise is made by the parties to the bill. The purchaser enters into no engagement.

These views accord with the doctrine laid down in Desha Shephard & Co. *v.* Steward, 6 Alabama 852, a case which more closely resembles the present than any we have been able to find. In it the Supreme Court of that state ruled that the drawees of a bill may sue the drawer or endorsers after it has been dishonoured, even though they obtained the bill before its dishonour; and that until acceptance they are strangers to the bill, and may acquire rights to it, and stand in the same condition as any other holder. It was said that there is no legal presumption if the drawee comes into possession of the bill previous to its dishonour, that he takes it with the obligation to accept.

Such being in our opinion the law, it was not error that the Court of Common Pleas gave judgment for the plaintiff upon the case stated. The fact is not distinctly found that notice of dishonour of the bill was duly given to the defendants, but it was conceded on the argument that such was the fact, and that such is the meaning of the case stated.

The judgment is affirmed.